UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BMO BANK N.A.,<br>fka BMO HARRIS BANK N.A., a national association<br>Plaintiff,<br><br>v.<br><br>CRS TRANSPORT, INC., a California corporation; SANDEEP DHANKHER, an individual resident and citizen of DOES 1-10,<br><br>Defendants. | ) | Case No. 1:25-cv-01764-FJS<br><br>ORDER DIRECTING THE CLERK OF THE COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT BE GRANTED<br><br>(ECF No. 14)<br><br><u>FOURTEEN (14) DAY DEADLINE</u> |

## I. INTRODUCTION

This action has been directly assigned to a magistrate judge. Pursuant to 28 U.S.C § 636(b)(1)(B), Local Rule (c)(19), and Local Rule Appendix A, subsection (m), the undersigned shall direct the Clerk of the Court to assign a district judge to this action. Accordingly, the undersigned shall issue these findings and recommendations as to the motion for default judgment to the assigned district judge.

Pending before the court is Plaintiff BMO Bank N.A.'s ("Plaintiff") motion for default judgment (ECF No. 14). Plaintiff seeks default judgment against Defendants CRS Transport Inc., and Sandeep Dhankher (collectively, "Defendants") based on Defendants' default on contracts

involving utility vehicles. No opposition to the motion has been filed.

On June 26, 2026, the court held a videoconference hearing on the motion. (*See* ECF No. 18.) Ken Ichi Ito, Esq., appeared on behalf of Plaintiff. (*Id.*) Additionally, Mr. Sandeep Dhankher physically appeared at the hearing on behalf of himself and CRS Transport Inc. (*Id.*) Defendant Dhankher, proceeding *pro se*, was accompanied by Mr. Jodghbir Singh, a relative of Mr. Dhankher. Mr. Singh, who is not a certified court translator, indicated that Defendant did not speak English and required a Punjabi interpreter to communicate. (ECF No. 19.) Mr. Singh represented that neither Mr. Dhanker nor CRS Transport, Inc., had counsel in this matter.

Based on the language barrier between the court and Defendants, as well as the lack of counsel for corporate Defendant CRS Transport Inc., the undersigned continued the hearing until July 17, 2026. (*Id.*) The continuance was intended to ensure that Defendants had an adequate opportunity to decide whether to appear in the lawsuit, to move to set aside the default, and to hire a certified translator and counsel. (*Id.*) This court instructed Defendants that before the July 17, 2026, hearing, they could file a motion to set aside the entry of default but that the motion for entry of default remained pending.

On July 17, 2026, Mr. Ito appeared again via videoconference on behalf of Plaintiff. (ECF No. 20.) Mr. Dhankher again appeared in person. (*Id.*) A certified a Punjabi interpreter, Ms. Vandana Jhingan, accompanied Mr. Dhankher via zoom videoconference. (*Id.*) Through Ms. Jhingan, the court noted that in the three weeks between the two hearings, Defendants had neither appeared in the lawsuit nor moved to set aside the Clerk's entry of default. (*See* ECF Nos. 10, 11.)

Upon consideration of the moving papers, declarations and exhibits, and Defendants' lack of written objection in this matter, the undersigned FINDS AND RECOMMENDS that Plaintiff's motion for default judgment against Defendants Sandeep Dhankher and CRS Transport Inc., be GRANTED.

## II. BACKGROUND[1]

### A. The Loan Agreements

#### 1. *Agreement 2001 – March 3, 2021*

On March 3, 2021, Plaintiff and CRS TRANSPORT INC. ("CRS Transport") entered into a Loan and Security Agreement with contract number ending 2001 (together with all amendments, modifications, and extensions thereto) ("Agreement 2001"), whereby Plaintiff agreed to finance CRS Transport's purchase of the vehicles ("2001 Vehicles") described therein for use in CRS TRANSPORT's business. (ECF No. 1, Ex. 1.) CRS TRANSPORT further agreed to pay Plaintiff $179,145.36, including interest, pursuant to the terms and conditions stated therein. (*Id.*)

#### 2. *Agreement 9001- July 21, 2022*

On July 21, 2022, Plaintiff and CRS TRANSPORT entered into a Loan and Security Agreement with contract number ending 9001 (together with all amendments, modifications, and extensions thereto) ("Agreement 9001"). (ECF No. 1, Ex. 2.) Agreement 9001 outlines, Plaintiff's willingness to finance CRS TRANSPORT's purchase of the vehicles ("9001 Vehicles") described therein for use in CRS TRANSPORT's business. (*Id.*) CRS TRANSPORT further agreed to pay Plaintiff $489,776.40, including interest, pursuant to the terms and conditions stated therein. (*Id.*)

### B. The Guaranties

In connection with Agreement 2001 and Agreement 9001, Defendant Dhankher executed continuing guaranties on March 3, 2021, and July 21, 2022. (ECF No. 1, Ex. 3.) These continuing guaranties obligate Defendant Dhankher to ensure full and timely performance of all of CRS Transport's, present and future liabilities to Plaintiff. (*Id.*) Therein, Defendant Dhankher also "unconditionally guaranteed the entirety of CRS Transport's indebtedness to Plaintiff, and is therefore directly and individually liable for such indebtedness." (ECF No. 1 at 3.)

[1] Background facts are derived from the allegations in the complaint as well as the exhibits annexed thereto. (ECF No. 1)

C. The Security Interest

Based on the agreements, CRS Transport granted Plaintiff a first-priority interest in the following vehicles as collateral:

1. 2022 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2530N259427; Serial No. 6001334798; and
2. 2022 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2539N259426; Serial No. 600133692; and
3. 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2531P2816911; Serial No. 6001366200; and
4. 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2533P2816912; Serial No. 6001366199; and
5. 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2535P2816913; Serial No. 6001366197; and
6. 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2537P2816914; Serial No. 6001366198.

(ECF No. 1 at 3-4.)

Plaintiff perfected its security interest in these vehicles by recording its lien on the certificates of title. (ECF No. 1, Ex. 4.)

D. Default by Defendants

Plaintiff provides that Defendants are in default on Agreement 2001 and Agreement 9001, as well as the guaranties for their failure to pay their amounts due thereunder. (ECF No. 1 at 4.) Defendants' defaults under the Agreements and the Guaranties are continuing. (*Id.*) As of the respective dates of default, the principal amount due and owing after acceleration were as follows:

- Agreement 2001: $37,112.89
- Agreement 9001: $233,074.32

(*Id.* at ¶ 18.)

At the time of default, accrued and unpaid interest were as follows:

- Agreement 2001: $0.00
- Agreement 9001: $1,546.35

Calculated from the respective dates of default to the dates of acceleration, accrued and unpaid interest due and owing under the Agreements is as follows:

- Agreement 2001: $0.00
- Agreement 9001: $7,164.06

(*Id.* at ¶ 19.)

Under the Agreements, upon acceleration, Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of 1.5% per month (18% per annum) or the maximum rate not prohibited by applicable law. (*Id.* at ¶ 20.) The Agreements were accelerated on October 29, 2025. (*Id.*) The daily default rate of interest accruing since the dates of acceleration are as follows:

- Agreement 2001: $18.56
- Agreement 9001: $116.54

(*Id.*)

Under the Agreements, Defendants are obligated to pay late charges and other fees. (*Id* ¶ 21.) As of the respective dates of default, late charges have accrued under the agreement as follows:

- Agreement 2001: $0.00
- Agreement 9001: $2,380.84

(*Id.* at ¶ 22.)

Plaintiff further indicates that other charges, including but not limited to insufficient fees or title searches have accrued under the Agreements as follows:

- Agreement 2001: $0.00
- Agreement 9001 $220.00

(*Id.* ¶ 23.)

Upon default, Defendants are obligated to pay all expenses of retaking, holding, preparing for sale and selling the Vehicles. (*Id.* at ¶ 24.) With the exception of 2023 Utility Refrigerated Van with VIN NUMBER 1UYVS2533P2816912, Plaintiff has been unable to recover the collateral provided for in the security agreement. (*See* ECF No. 14 at ¶ 17.) In the event of their recovery, Plaintiff indicates that Defendants will be credited the sale amount pursuant to the terms of the agreement. (*Id.* at 13.)

Plaintiff provides that around "November 3, 2025, a payment of $2,448.13 was received for Agreement 2001, and applied to principal, reducing the principal balance to $34,739.00. (ECF No. 14 at ¶ 19.)

On February 12, 2026, Plaintiff, pursuant to Agreement 9001, sold VIN ending 6912 for net proceeds of $36,604.00, and incurred $48,943.13 in repossession, storage, and repair fees. (ECF No. 14 at ¶ 20.) At the time of repossession, based on its market knowledge, Plaintiff believed it would be able to sell the unit for $52,000.00 to $61,000.00. (*Id.*; *see also* ECF No. 16-6.) Upon recovery of the unit, Plaintiff has spent $41,860.63 in repair fees, $3,362.50 in storage fees, $350.00 in transportation fees, and $1,450.00 in delivery fees, along with $2,100.00 in other service fees and costs for the involuntary repossession. (ECF No. 14 at ¶ 20.)

Defendants are further obligated to pay the attorney's fees and costs Plaintiff incurred in the enforcement of its rights under the Agreements, including expenses of filing and prosecuting this lawsuit. (*Id.* at ¶18.)

By letters dated November 10, 2025, Plaintiff noticed Defendants of their defaults under the Agreements and the Guaranties, and of Plaintiff's election to accelerate the loans memorialized in the Agreements and made demand upon them to pay the amounts due and surrender the Vehicles. (ECF No. 15-7.)

On December 5, 2025, Plaintiff filed this action against Defendants, asserting claims of injunctive relief, specific performance, claim and delivery, and breach of contract. (*See* ECF No. 1.) Defendants did not respond to the complaint. On March 20, 2026, Plaintiff requested an entry of default be entered against Defendants (ECF No. 9); the Clerk issued an entry of default the same day (ECF Nos. 10, 11.).

Plaintiff states that despite demand and noticing Defendants of their default under the Agreements, Defendants failed and refused to pay the amount due and owing under the Agreements and Guaranties. (ECF No. 14 at ¶ 22.) Plaintiff maintains that they performed any and all conditions and obligations required of it under the Agreements and Guaranties. (*Id.* at ¶ 25.)

Consequently, on May 11, 2026, Plaintiff filed the instant motion for default judgment against Defendants. (ECF No. 14.) Despite appearing at both the June 26, 2026, hearing and the July 17, 2026, hearing, Defendants did not respond to the complaint, move to set aside an entry of default, or oppose the pending motion for default judgment.

E. <u>Total Relief Requested by Plaintiff</u>

1. *<u>Money Damages</u>*

Plaintiff's motion requests that this court enter default judgment against Defendants, jointly and severally, in total amount of $317,434.50, which includes principal fees, attorney's fees, and court costs. (ECF No. 14 at 13.) As the court explains further below, this estimated sum is based on assumed award of 13.20 hours of attorney's fees. (*See* ECF Nos. 14, 16.) Yet, these hours have been amended since the date the pending motion was filed.[2] Accordingly the court proceeds with 11.20 hours as proper baseline for calculation of attorney's fees in this matter.

Furthermore, since the date that the pending motion for default judgment was filed, Plaintiff has suffered additional unpaid interest and fees in connection with Agreement 2001 and Agreement 9001. In both the pending motion and at the July 17, 2026, hearing on Plaintiff's motion for default judgment, Plaintiff indicated its intention to seek interest accruing under the Agreements since April 3, 2026.

Accordingly, Plaintiff seeks $17.35 per day, calculated from April 3, 2026, onward, in connection with Agreement 2001. (ECF No. 14 at 10; *see also* ECF No. 15-8.) At the time of these findings and recommendations, Plaintiff has suffered additional unpaid interest over the

[2] Based on the July 17, 2026, hearing Plaintiff is no longer seeking 11.25 hours worth of attorneys fees earned in connection with litigating the above captioned case, nor is Attorney Ito seeking 2 worth of hours in attorney's fees incurred in connection with the pending motions.

course of one hundred and seventy-nine (179) days in the amount of $3,105.65.

Plaintiff also seeks $116.54 per day, calculated from April 3, 2026, onward, in connection with Agreement 9001. (ECF No. 14 at 10; *see also* ECF No. 15-9.) At the time of these findings and recommendations, Plaintiff has suffered additional unpaid interest over the course of one hundred and seventy-nine (179) days in the amount of $20,860.66.

Based on the developments outlined above, Plaintiff effectively requests a total default Judgment in the amount of $326,587.37. This sum represents the combined principal, interest, and fees incurred under both Agreement 2001 and Agreement 9001 but excludes attorney's fees and court costs. The sum is itemized as follows:

(1) As to Agreement 2001,

a. Principal: $34,739.00

b. Interest & Fees: $5,708.15

c. Total: $40,477.15

(2) As to Agreement 9001,

a. Principal: $233,074.32

b. Interest & Fees: $62,438.20

c. Total: $295,512.52

(*See* ECF No. 14.)

Plaintiff seeks 11.20 hours of attorney's fees at a rate of $325.00 an hour for a total of $3,640.00 in attorney's fees. (*Id.*) Plaintiff has also incurred court costs in the amount of $1,151.14. (*Id.*) Therefore, with attorney's fees and court costs, Plaintiff requests that this court provide money damages in the amount of $340,780.81.

2. *Possession of Remaining Collateral Vehicles*

Based on the loan and security agreements, Plaintiff seeks to be awarded possession of all remaining collateral vehicles outlined in the security agreement. Accordingly, Plaintiff seeks an award of possession for the following vehicles:

- 2022 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2530N259427; Serial No. 6001334798; and

- 2022 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2539N259426; Serial No. 600133692; and
- 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2531P2816911; Serial No. 6001366200; and
- 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2535P2816913; Serial No. 6001366197;
- 2023 Utility Refrigerated Vans, Model S600; VIN: 1UYVS2537P2816914; Serial No. 6001366198.

(*Id.*) Plaintiff contends that in the event of recovery, it will sell the vehicles listed above in a commercially reasonable manner and credit the money judgment herein awarded with the net sales proceeds. (*Id.*)

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process. Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. Fed. R. Civ. P. 55(a). After entry of default, a plaintiff can seek entry of default judgment. Fed. R. Civ. P. 55(b). Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

*Id.*

The decision to grant a motion for default judgment is within the discretion of the court. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). The Ninth Circuit has set forth the following seven factors (the "*Eitel* factors") that the court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v, McCool*, 782 F.2d 1770, 1471-72 (9th Cir. 1986).

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6). The amount of damages must be proven at an evidentiary hearing or through other means. *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted), *superseded by statute on other grounds*, Pub. L. No. 100-702, 102 Stat. 4669. The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

## IV. DISCUSSION

### A. Service of Process

The court considers the adequacy of service of process before evaluating the merits of a motion for default judgment. *See Mason v. Genisco Tech. Corp.,* 960 F.2d 849, 851 (9th Cir. 1992). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail)*, 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the

complaint." *Direct Mail, 840 F.2d at 688* (quoting *United Food & Commercial Workers Union v. Alpha Beta Co*., 736 F.2d 1371, 1382 (9th Cir. 1984)). But "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)). "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007).

Plaintiff is suing both a corporate entity and an individual in this action. The complaint identifies Defendant CRS Transport, Inc.'s, principal place of business as located at 6232 E. Saginaw Way, Fresno, California 93727. (ECF No. 1 at ¶ 4.) Defendant Dhankher is the alleged owner, sole director, and CEO of CRS Transport, Inc. (*Id.* at ¶ 5.) Defendant Dhankher is alleged to reside in Clovis, California 93611 (*Id.* at ¶ 6.)

1. *Service on Defendant CRS Transport Inc.*

Federal Rule of Civil Procedure 4(h) governs service on a domestic corporation, partnership, or other unincorporated association that is subject to suit under a common name. Under 4(h), a plaintiff may serve a corporation by following state law for service of a summons on an individual or by delivering a copy of the summons and complaint to an officer or agent and by a mailing a copy of each to the defendant. Fed. R. Civ. P. 4(h)(1).

Under California law, as a substitute to personal delivery of a copy of the summons and complaint, service may be made on a corporation: (1) by leaving a copy of the summons and the complaint during usual office hours in the office of the corporation's agent for service of process, president, chief executive, vice president, secretary or assistant secretary, assistant treasurer, controller or chief financial officer, general manager, or another head of the corporation; (2) with a person "apparently in charge" of the office; and (3) "thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. P. §§ 415.20(a), 416.10.

The proof of service indicates that Plaintiff served Defendant CRS Transport, Inc., with the summons and complaint on its agent Sandeep Dhankher on February 25, 2026, by leaving a copy

of the summons and the complaint during usual office hours with an agent authorized to receive service of process. (ECF No. 7.) The proof of service further indicates that the server spoke with the agent authorized to receive process personally and the agent requested that the documents be left on the doorstep. (*Id.*) The proof of service also demonstrates a copy of the summons and a copy of the complaint was mailed to Defendant CRS Transport, Inc., on February 27, 2026. (*Id.*) Moreover, at the July 17, 2026, hearing Defendant CRS Transport Inc., through his interpreter, indicated that he received a "letter of his need to appear in this matter."

Having considered the proofs of service, the court finds that Defendants were adequately served with the summons and complaint pursuant to Federal Rule of Civil Procedure 4.

2. *Service on Defendant Dhankher*

Federal Rule of Civil Procedure 4(e) governs service on an individual. Under 4(e), a plaintiff may serve an individual within a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Here, the proofs of service indicate that Defendant Dhankher was personally served on February 25, 2026, at 9:05 a.m., at 6232 East Saginaw Way, Fresno, CA 93727. (ECF No. 8.) The proof of service indicates that the server spoke with Defendant Dhankher directly who requested that the documents be left on the doorstep. (*Id.*) Moreover, at the July 17, 2026, hearing Defendant Dhankher, through his interpreter indicated that he received a "letter of his need to appear in this matter."

Having considered the proofs of service, the court finds that Defendants were adequately served with the summons and complaint pursuant to Federal Rule of Civil Procedure 4.

B. The *Eitel* Factors Weigh in Favor of Default Judgment

For the reasons outlined further below the court finds that consideration of the *Eitel* factors weighs in favor of granting default judgment in favor of Plaintiff.

1. *Possibility of Prejudice to Plaintiff*

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id*.; *Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Plaintiff contends that denying judgment would prejudice Plaintiff because "Defendants refused to participate in the action" and "made default judgment the sole avenue of relief available to Plaintiff." (ECF No. 14 at 11.) The court agrees that Plaintiff would be prejudiced if default judgment were not granted in this case. Default has been entered against Defendants and Plaintiff has no other means to recover against them. This factor weighs in favor of default judgment.

2. *Merits of Plaintiff's Claims and Sufficiency of Complaint*

The second and third *Eitel* factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc*., 238 F. Supp. 2d at 1175 (citations and internal quotations omitted). Notably, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

Based on the agreements at issue, California contract law applies because the contract was executed in California and Plaintiff does not assert any choice of law provisions. In California, "[t]o be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *First Am. Com. Bancorp*, 2020 WL 5027990, at *3, quoting *Walsh v. W. Valley Mission Cmty. Coll. Dist*., 66 Cal. App. 4th 1532, 1545 (1998).

Here, Plaintiff alleges that Defendants breached their payment obligations under the Agreements and Guaranties by failing to make payments as they became due and return the vehicles owed to Plaintiff under the contract. (ECF No. 1 at ¶¶28, 43.) Plaintiff further alleges that it is entitled to contractual money damages from Defendants and immediate possession of the remaining vehicles as provided for in the Agreements. (*Id.* at ¶¶ 49, 63.)

The court finds that Plaintiff's complaint sufficiently states a claim for breach of the Agreements and Guaranties, which weighs in favor of default judgment.

3. *The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, Plaintiff seeks judgment in the amount of $340,780.81. This total includes a request for attorney's fees in the amount of $3,640.00 and court costs in the amount of $1,151.14. The court finds the amount at stake is not large, and it is proportional to the harm caused by Defendants' failure to repay the loan amounts. This factor weighs in favor of default judgement.

4. *The Possibility of Dispute Concerning Material Facts*

The facts of this case are straightforward and Plaintiff has provided the court with well-pled allegations and a declaration with exhibits in support. Here, the court may assume the truth of well-pled facts in the complaint following the Clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendants' repeated failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See, e.g.*, *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Moreover, Defendants did not allude to any dispute of material fact during the July 17, 2026, hearing. Therefore, this factor weighs in favor of default judgment.

5. *Whether the Default Was Due to Excusable Neglect*

The sixth Eitel factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Plaintiff adequately served Defendants with the summons and complaint. (ECF Nos. 7, 8.) Moreover, Plaintiff served Defendants with a copy of the request for entry of default, the motion for default judgment along with the accompanying declarations of Whitney Oliver and Ken I. Ito. (ECF Nos. 9, 15, 16.) Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, as well as this court's grant of an additional opportunity to provide a response to the pending motion (ECF No. 19), Defendants have not filed any opposition. Thus, the court finds that Defendants chose not to defend themselves in this action. This affirmative choice is not excusable neglect. This factor weighs in favor of default judgment.

6. *The Strong Presumption Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Yet district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Although the court acknowledges the policy favoring decisions on the merits, that policy is less persuasive here because Defendants have not responded. Accordingly, the court finds that this factor does not weigh against entry of default judgment.

For the reasons outlined above, the undersigned finds and recommends that Plaintiff's motion for default judgment be granted.

C. Requested Relief

The loan agreements at issue all provide that in the event of default by the debtor or guarantor, all indebtedness becomes immediately due and payable, Plaintiff is entitled to take possession of and dispose of the equipment and to have the debtor pay all interest and expenses incurred—including reasonable attorney's fees. (ECF No. 1, Ex. 1 Ex. 2 Ex. 3.) As of the July 17, 2026, hearing Plaintiff effectively requests a total default judgment in the amount of $326,587.37.

1. *Damages*

For convenience, Plaintiff's money damages are outlined as follows:

(1) As to Agreement 2001,

a. Principal: $34,739.00

b. Interest & Fees: $5.708.15

c. Total: $40,77.15

(2) As to Agreement 9001,

a. Principal: $233,074.32

b. Interest & Fees: $62,438.20

c. Total: $295,512.52

(*See* ECF No. 14 at 9-10.)

Calculated as of September 29, 2026, the court notes that the principal, interest, and fees due and owing under the Agreements and Guaranties, not including attorney's fees and court costs, is $335,989.67. Furthermore, the Agreements and declaration constitute sufficient proof that Plaintiff has sustained damages for the breaches of the Agreements. This amount is also supported by the declaration of Whitney Oliver and declaration of Ken I. Ito. (*See* ECF Nos. 15, 16.)

2. *Attorney's Fees and Costs*

To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In considering what constitutes a reasonable hourly rate, the Court looks to the

prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). Thus, when a case is filed in the Eastern District of California, this district "is the appropriate forum to establish the lodestar hourly rate ...." *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

i. *Hours Reasonably Expended*

Hourly rates for attorney fees awarded in the Eastern District of California range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately thirty years. *See, e.g., Owen* v. Hyundai Motor Am., No. 2:22-cv-00882-KJM-CKD, 2024 WL 3967691, at *4 (E.D. Cal. Aug. 28, 2024) (finding typical rate for attorneys who have been practicing for more than ten years but less than fifteen years is between $350 and $375). Plaintiff's counsel was admitted to practice in California in 2011 and has almost fifteen years of experience. (ECF No. 16, Ito Decl., ¶ 9.) Attorney Ito is seeking $325.00 per hour for the work performed in the above captioned case.

Attorney Ito originally stated that he has "expended 11.25 hours of work" in the above captioned matter. (ECF No. 16 at ¶ 5.) Based on an initial review of the accompanying exhibits, the court noted that only 11.20 hours of attorney's fees were supported. Accordingly, the court inquired into the "missing" .05 hours at the July 17, 2027, hearing. Attorney Ito indicated that the additional .05 hours was a typo. The 11.20 hours provided for in Exhibit A is the proper calculation of work performed in this matter. (*See Id.* at 10, Ex. A.) In addition to the 11.20 hours, Attorney Ito projected an additional $650.00 in additional attorney fees relating to time spent on the pending motion for default judgment. This court offered Attorney Ito an additional opportunity to supplement his request for attorney fees to substantiate the work for these two hours. But at the July 17, 2026, hearing, Attorney Ito stated that he would waive any additional fees incurred in connection with the pending motion for default judgment. Accordingly, upon review of the declaration, exhibited invoice, and statements made by Attorney Ito, the court finds 11.20 hours of attorney fees at a rate of $325.00 per hour to be reasonable and supported. The

undersigned therefore finds and recommends an award of attorney's fee in the amount of $3,640.00.[3]

ii. *Court Costs*

In addition to attorneys' fees, Plaintiff seeks the recovery of court costs in the amount of $1,151.14, which consists of the costs of court filing fees and service of process. (ECF No. 16, Ito Decl., ¶ 12.) The court finds these costs to be reasonable.

V. CONCLUSION AND RECOMMENDATION

IT IS HEREBY ORDERED that the Clerk of the Court is DIRECTED to randomly assign this matter to a District Judge.

Based upon the foregoing, the court HEREBY RECOMMENDS that:

(1) The Clerk of the Court be DIRECTED to randomly assign a district judge in this matter; and

(2) Plaintiff's motion for default judgment (ECF No. 14) be GRANTED; and

(3) Default Judgment be entered in favor of Plaintiff BMO Bank N.A. and against Defendants CRS Transport, Inc., and Sandeep Dhankher, jointly and severally, in the amount of $335,689.67, plus post-judgment interest; and

(4) Defendants be ordered to pay Plaintiff an amount of $4,791.14, which represents the reasonable attorneys' fees of $3,640.00 and court costs of $1,151.14; and

(5) Plaintiff be awarded possession of the vehicles listed below and provided for in the security agreements:

a. 2022 Utility Refrigerated Vans: 53' with 2020 Thermo King, Model S600: VIN 1UYVS2530N2529427; Serial No. 6001334798; and

b. 2022 Utility Refrigerated Vans: 53' with 2020 Thermo King, Model S600: VIN 1UYVS2539N2529426; Serial No. 600133692; and

c. 2023 Utility Refrigerated Vans: 53' with 2020 Thermo King, Model S600: VIN

---

[3] Plaintiff's original motion sought "reasonable attorney's fees in the amount of $4,290.00." (*See* ECF No. 14 at 10.) But because Attorney Ito waives two hours in attorney's fees earned in connection with the pending motion for default judgment, the ultimate sum of attorney's fees sought in this case is $3,640.00.

1UYVS2531P2816911; Serial No. 6001366200; and

d. 2023 Utility Refrigerated Vans: 53' with 2020 Thermo King, Model S600: VIN 1UYVS2535P2816913; Serial No. 6001366197; and

e. 2023 Utility Refrigerated Vans: 53' with 2020 Thermo King, Model S600: VIN 1UYVS2537P2816914; Serial No. 6001366198; and

(6) Upon recovery and sale of the vehicles outlined in the security agreements, Plaintiff SHALL credit the net sales proceeds of any vehicle sale to the money judgment entered herein.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within fourteen (14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS FURTHER ORDERED that Plaintiff shall serve a copy of these findings and recommendations on Defendants within three (3) days of entry.

IT IS SO ORDERED.

Dated: **September 29, 2026**

UNITED STATES MAGISTRATE JUDGE